UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| RONALD L. HILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:17-cv-00070-SNLJ |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

The Commissioner of the Social Security Administration denied plaintiff Ronald Hill's applications for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. Hill now seeks judicial review. The Commissioner opposes the motion. With the issues being fully briefed, and for the reasons set forth, this Court **AFFIRMS** the Commissioner's decision.

**I.     Procedural History**

Hill's application was denied at the initial determination level.  He then appeared before an Administrative Law Judge ("ALJ").  The ALJ found Hill is not disabled because he was not under a disability as that term is defined by the Social Security Act. Hill then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration.  The Appeals Council denied review. Thus, the decision of the ALJ stands as the final decision of the Commissioner.  *See* 20 C.F.R. § 404.981. Hill now seeks review by this Court pursuant to 42 U.S.C. § 405(g).

## II. Disability Determination—Five Steps

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 404.1520(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *see also* 20 C.F.R. § 404.1520(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" (RFC) to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i). An RFC is "defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotations omitted); *see also* 20 C.F.R. § 404.1545(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every

reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 404.1545(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Bladow v. Apfel*, 205 F.3d 356, 358–59 n.5 (8th Cir. 2000); 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## III. The ALJ's Decision

At Step One, the ALJ found Hill met the insured status requirements through December 31, 2015, and had not engaged in substantial gainful activity since April 1, 2014. (Tr. 13). At Step Two, the ALJ found Hill suffers from the following severe impairments: (1) bipolar disorder; (2) intermittent explosive disorder; (3) attention deficit hyperactivity disorder; (4) antisocial personality disorder; and (5) substance abuse. (Tr. 13). At Step Three, the ALJ concluded Hill does not have an impairment or combination

4

of impairments that meets or equals one of the presumptively disabling impairments listed in the regulations. (Tr. 14).

Next, in beginning the analysis of Step Four, the ALJ determined Hill's RFC. The ALJ found that Hill

> has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: he is limited to remembering and carrying out simple, routine tasks and making simple work-related decisions. He cannot perform production pace tasks. He can have occasional contact with coworkers and supervisors; however, he cannot have contact with the general public. He cannot perform tandem tasks that require work with a coworker to complete them.

(Tr. 15). As part of this determination, the ALJ found Hill's allegations about his symptoms' intensity, persistence, and limiting effects are not entirely consistent with the medical evidence and other evidence in the record. (Tr. 16). The ALJ recognized Hill's "primary allegation [of] difficulty interacting with and getting along with others," but noted a "pattern of treatment [that] was routine and conservative … [with] no evidence of escalating treatment modalities," which the ALJ believed was inconsistent with what "one would expect for a disabled individual." (Tr. 16-17). It was also highlighted that Hill "maintains relationships with his ex-wife and roommate," "interacts occasionally with others on social media," and even managed to "work at two fast food establishments during the alleged period of disability." (Tr. 17). The ALJ recognized Hill had a sub-optimal global assessment of functioning (GAF) score of 45—indicating serious symptomology—but noted that his various GAF scores "were always 45," implying that they could not be fully trusted (the ALJ gave them "little weight"). (Tr. 18). Overall, the

ALJ observed that the record—taken as a whole—did not support Hill's allegations of disabling mental limitations. (Tr. 18).

With an RFC determination in hand, the ALJ continued on through Step Four to determine whether Hill can perform his past relevant work given his designated RFC. The ALJ determined Hill did not have past relevant work. (Tr. 18).

At Step Five, the ALJ analyzed whether Hill can successfully adjust to any work in light of his RFC. The ALJ noted that, when a claimant has solely non-exertional limitations, Section 204.00 in the Medical Vocational Guidelines (the "Grids") provide a helpful framework. Based on this framework, and the testimony of a vocational expert (VE) who opined that Hill could perform work as a dishwasher, janitor, or laundry worker (all of which have significant numbers in the national economy), the ALJ found Hill was not disabled. (Tr. 19).

## IV. Standard of Review

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance of the evidence but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the [Commissioner's] findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (alteration in original) (*quoting Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987)). The Court must also consider any evidence that fairly detracts from the Commissioner's decision. *Id.* "[I]f there is substantial evidence on the

6

record as a whole, [the Court] must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992). In reviewing whether the ALJ's decision was supported by substantial evidence, this Court does not substitute its own judgment for that of the ALJ—even if different conclusions could be drawn from the evidence, and even if this Court may have reached a different outcome. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

## V. Discussion

Hill argues both the Appeals Council and the ALJ erred. First, Hill argues the Appeals Council erred when it failed to consider new evidence presented to it on appeal, including a 2016 medical source statement (MSS) from Dr. David Goldman—a psychiatrist at Mark Twain Behavioral Health. Second, Hill argues the ALJ erred in determining his mental impairments do not meet a listing under 12.04, 12.06, or 12.08.

### A. Hill's Newly-Proffered Evidence to the Appeals Council

Hill's first argument is baseless. The Appeals Council did, in fact, consider new evidence presented to it on appeal. It was stated by the Appeals Council that:

> [Hill] submitted records from Mark Twain Behavioral Health, dated March 10, 2014 through July 23, 2015, 15 pages. This evidence is not new because it is a copy of Exhibit(s) B2F and B5F.

It was further stated that:

> [Hill] also submitted records from Mark Twain Behavioral Health, dated January 13, 2016 through June 25, 2016, 20 pages, and a medical source statement from David Goldman, D.O., dated September 13, 2016, 7 pages. We find this evidence does not show a reasonable probability that it would change the outcome of the decision.

7

(Tr. 2). Thus, Hill is factually incorrect to suggest the Appeals Council "simply issued a standard [n]otice … denying [p]laintiff's [r]equest for [r]eview."

Moreover, regulations make clear the Appeals Council need only consider new evidence that is "new, material, and relates to the period on or before the date of the hearing decision, and [where] there is a *reasonable probability that the additional evidence would change the outcome of the case*." 20 C.F.R. § 404.970(a)(5) (emphasis added). The Eighth Circuit makes plain that the Court should "only consider the applicant's medical condition as of his or her date last insured." *Turpin v. Colvin*, 750 F.3d 989, 993 (8th Cir. 2014). Indeed, "[e]vidence is material"—as that term is understood under Section 404.970(a)(5)—"if it is relevant to claimant's condition for the time period for which benefits were denied." *Lamp v. Astrue*, 531 F.3d 629, 632 (8th Cir. 2008). In this respect, "Medical evidence of a claimant's condition subsequent to the expiration of the claimant's insured status is relevant evidence because it may bear upon the severity of the claimant's condition before the expiration of his or her insured stated," *Schulte v. Astrue*, 694 F.Supp.2d 1030, 1037 (E.D. Mo. 2010) (*quoting Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984). However, "a non-disabling condition which later develops into a disabling condition after the expiration of a claimant's insured status cannot be the basis for an award of disability benefits under Title II." *Id*. (*quoting Stanfield v. Chater*, 970 F.Supp. 1440, 1456 (E.D. Mo. 1997)).

Goldman's MSS indicates both "marked" and "extreme" restrictions related to Hill's work-related mental and social abilities. Taken alone, Goldman's MSS would,

indeed, appear indicative of a disabling impairment. However, it is the additional records submitted by Hill that render a fatal blow to his argument against the Appeals Council. As the Appeal Council noted, Hill submitted both Goldman's MSS, dated September 13, 2016, and a series of records between January 13, 2016 and June 25, 2016. Again, Hill's last date of insured status is December 31, 2015. Thus, under *Basinger*, these additional records, some coming not long after the expiration of Hill's insured status, may be relevant in helping to explain Hill's mental condition during his insured status. *Basinger*, 725 F.2d at 1169.

But, the records most proximate to December 31, 2015—including sessions that occurred on January 13, 2016, March 7, 2016, March 30, 2016, and June 29, 2016—show either slightly improving or otherwise stable mental conditions. None of these sessions included a change to Hill's medications and none noted new problems. And each of these sessions specifically noted an absence of aggression, no psychosis, and no risk of harm to others. In the March 7th session, Hill is stated to be "spontaneously conversant," "maintain[ing] good eye contact throughout," without any "eccentricities of speech," who is both "polite and cooperative … display[ing] conversationally congruent and appropriate smiling and affability." The remainder of that session was decidedly middling. In total, these new records are mostly commensurate with Hill's treatment records from 2015—they indicate a stable condition.

It is unsurprising, then, that the Appeals Council invoked Section 404.970(a)(5) in explaining these records "do[] not show a reasonable probability that [they] would change the outcome of the decision." (Tr. 2). If the ALJ was unconvinced by Hill's 2015

9

records, so too would the ALJ have been unconvinced by similar early-to-mid 2016 records. The majority of these new records simply did not change the calculus to a degree that the Appeals Council felt Section 404.970(a)(5) was satisfied.

That leaves Goldman's MSS from September of 2016 as something of an outlier. The MSS, as mentioned, certainly took on a more drastic tone than other records from 2015 and 2016, suggesting Hill has both "marked" and "extreme" mental and social limitations. And it may be that Hill's condition substantially worsened in the handful of months following his otherwise benign follow-up sessions; but, if that indeed occurred, it would constitute the situation of a later-developing disabling condition outside of the insured status period, which cannot act as the basis for an award of disability benefits. *See Thomas v. Sullivan*, 928 F.2d 255, 260-261 (8th Cir. 1991) (claimant's worsening condition, which deteriorated after the ALJ's decision, could not act as the basis of determining claimant's condition at the time he was eligible for benefits).

In sum, the Appeals Council did not err in finding Hill's newly-proffered treatment records, which came after the expiration of his insured status and were mostly commensurate with treatment records generated during his insured status, were of a quality unlikely to change the outcome of the case pursuant to Section 404.970(a)(5). To the extent a single outlier record suggests a disabling condition eventually developed, it is simply irrelevant in light of intervening records occurring between the date of the outlier record and the insured status expiration date that indicate Hill's condition did not actually worsen until well after his insured status had ended. Hill's first point is denied.

### B. Hill's Criticism that the ALJ Erred in Refusing to Find His Mental Conditions Met Listing 12.04, 12.06, or 12.08.

Hill's second argument takes issue with the fact that the ALJ refused to find his mental conditions met one of the listings under Step Three—either 12.04, 12.06, or 12.08. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.[1] Hill argues the evidence, in fact, supported a finding that he was disabled under those listings because he had a GAF score under 50 and because the "ALJ mischaracterized the evidence when evaluating [his] social functioning."

As to Hill's GAF score, he relies on the case of *Pates-Fires*, which itself relied on the fourth edition of the DSM, when it was explained that "GAF scores at 50 or below, taken as a whole, indicate [a claimant] has serious symptoms [and] serious impairments in social, occupational, or school functioning." *Pates-Fires v. Astrue*, 564 F.3d 935, 944 (8th Cir. 2009) (*citing* Diagnostic and Statistical Manual of Mental Disorders (4th ed. Am. Psychiatric Ass'n 1994)). But, *Pates-Fires* did not hold that GAF Scores at or below 50 *mandate* a finding of disability. *Id*. at 944-945. And, in any event, the newest edition of the DSM—the long-awaited fifth edition published in 2013—"dropped the GAF scale as a diagnostic tool because it suffers from a conceptual lack of clarity and 'questionable psychometrics in routine practice.'" *Mosier v. Colvin*, 2014 WL 4722288 at *3 (W.D.

---

[1] Listing 12.04 sets forth criteria for depressive, bipolar, and related disorders, listing 12.06 sets forth criteria for anxiety and obsessive-compulsive disorders, and listing 12.08 sets forth criteria for personality and impulse-control disorders. Listing 12.09 was for substance addiction disorders, but is now reserved. Before being reserved, listing 12.09 was a so-called "reference listing" that directed the ALJ to consider the severity requirements set forth in listings 12.02, 12.04, 12.06, and 12.08, amongst others. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.09 (2015). In any event, Hill makes no serious effort in explaining how substance abuse contributed to his disability; instead, he focuses primarily on social impairments implicating the other listings.

Mo. Sept. 23, 2014) (*quoting* Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed., Am. Psychiatric Ass'n 2013)). Indeed, more modern case law from the Eighth Circuit has distanced itself from GAF scores, indicating an ALJ's complete failure to mention a claimant's GAF score does not require reversal. *Wright v. Astrue*, 489 Fed.Appx. 147, 149 (8th Cir. 2012). In fact, the Eighth Circuit has even outright concluded "GAF scores are of little value." *Nowling v. Colvin*, 813 F.3d 1110, 1123 (8th Cir. 2016); *see also Jones v. Astrue*, 619 F.3d 963, 973-974 (8th Cir. 2010) ("Moreover, the Commissioner has declined to endorse the [GAF] score for use in the Social Security and [Supplemental Security Income] disability programs and has indicated that [GAF] scores have no direction correlation to the severity requirements of the mental disorders listings.").

In any event, something *Pates-Fires* did not deal with, factually-speaking, was a GAF score that remained exactly the same for over a year—the issued confronted by the ALJ in this case. The GAF scores in *Pates-Fires* fluctuated between 20 and 58 over several years and, in some cases, fluctuated up to three times in a single day. *Pates-Fires*, 564 F.3d at 944. Here, there was a clear skepticism by the ALJ in observing that Hill's GAF scores remained remarkably consistent over the entire period in question. And, given recent criticism over the subjective inaccuracies of the GAF scale both by the Eighth Circuit and the American Psychiatric Association, this Court cannot find fault with the ALJ's skepticisms when she chose to afford Hill's GAF scores "little weight."

Moreover, it was not the case that the ALJ simply chose to ignore Hill's GAF scores. To the contrary, "an ALJ may afford greater weight to medical evidence and

12

testimony than to GAF scores when the evidence requires it." *Jones*, 619 F.3d at 974. And this is exactly what the ALJ did. She also considered the "routine and conservative" nature of Hill's treatment and, as already mentioned, the record is full of notations seemingly inconsistent with Hill's assigned GAF score, including repeated statements that Hill was "conversant," "polite," "cooperative," and "conversationally congruent" with no signs of psychosis or aggression. Other comments mention a "good response" to medication and that Hill was "comfortable with [his] medications." Several records even suggest Hill was primarily concerned with his financial situation and felony record, rather than any particularized mental condition. In fact, it is noteworthy that Hill states he was fired from KFC because of "a new felony policy" only one month before his alleged onset of disability. Finally, the ALJ observed that there was never any hospitalization or emergency intervention required, and that—taken as a whole—there were no signs of an "escalating treatment modalit[y]" indicative of what "one would expect for a disabled individual."

These various, competing factors within the record provided the ALJ ample foundation to afford "little weight" to Hill's GAF scores. The Court cannot find the ALJ erred in that respect. *See Brown v. Astrue,* 611 F.3d 941, 955 (8th Cir. 2010) (impairments controlled by medication and treatment cannot be considered disabling); *Gaddis v. Chater*, 76 F.3d 893, 896 (8th Cir. 1996) (counseling by provider for depression and anxiety that, in fact, mostly related to vocational, financial, and employment issues presented sufficient reason to discount alleged severity of symptoms given ulterior motive for seeking benefits); *Gamez v. Colvin*, 2014 WL 4112925 at *2

(W.D. Mo. Aug. 9, 2014) (contemporaneous findings of provider inconsistent with assigned GAF score permitted score to be discredited by ALJ).

In fact, Hill's other criticism that the "ALJ mischaracterized the evidence when evaluating [his] social functioning" fails for the same reasons. Essentially, Hill's argument invokes the substantial evidence standard; indeed, even if some evidence was "mischaracterized," this means little if the ALJ's ultimate conclusion was supported by substantial evidence—the standard for which this Court evaluates the ALJ's decision. *See Winn v. Commissioner*, 894 F.3d 982, 987 (8th Cir. 2018) ("As long as substantial evidence supports the ALJ's decision, we may not reverse because substantial evidence also would have supported a contrary outcome, or because we would have decided the case differently." (internal quotations omitted)).

Based on the relatively benign treatment records, indications that Hill was responsive to medication, his pleasant demeanor during his medical sessions, his seemingly cordial relationship with his roommate and ex-wife (whom he says he will eventually remarry) and social media use, the lack of any alarming outbursts (there were no hospitalizations, emergency treatments, or interventions), and the fact that most of his job-related complications appear to have more to do with his financial stresses and criminal history than any specific mental disorder, the Court finds there is substantial evidence to support the ALJ's decision. To be sure, the ALJ recognized Hill may have at least some mild-to-moderate mental impairments that affect his social functioning, which is why she limited him in his RFC to "simple work-related decisions" and only "occasional contact with coworkers and supervisors" that cannot require "tandem task

[with] coworker[s]." Because the ALJ's decision stayed within the permissible scope of discretion based on a foundation of substantial evidence, this Court will not second-guess that decision with the benefit of hindsight nor nit-pick possible mischaracterizations in the evidence. *Id*. Hill's second point is denied.

## VI. Conclusion

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. It does not substitute its own judgment for that of the ALJ. *McNamara*, 590 F.3d at 610. Having found the ALJ's conclusions were supported by substantial evidence and that legal standards were correctly applied, this Court affirms the ALJ's decision.

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint (#1) is **DISMISSED with prejudice**. A separate judgment will accompany this Order.

So ordered this 20th day of December 2018.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE